**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CHRISTA L. PETERSON,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC,

Defendants.

Case No. 0:20-cv-00606 (DSD/ECW)

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

This case is straightforward. Plaintiff contends that Experian violated § 1681e(b) because it does not assume that all unsecured, pre-petition debts are discharged in a Chapter 7 bankruptcy. But Plaintiff points to no authority requiring Experian to make that assumption. *Cf. White v. Experian Information Solutions, Inc.*, No. 8:05-cv-01070-DOC-MLG, 2008 WL 11518799, at *3–14 (C.D. Cal. Aug. 19, 2008). Indeed, since Experian filed its Motion for Summary Judgment, several cases have held that Experian's relevant procedures are reasonable as a law—even under Rule 12(b)'s more liberal standard. *Hernandez v. Experian Info. Sols., Inc.*, No. LACV2009908DOCRAOX, 2021 WL 2325019, at *3–4 (C.D. Cal. June 4, 2021); *Wheeler v. Trans Union LLC,* No. LACV2011710DOCRAOX, 2021 WL 2290575, at *3–4 (C.D. Cal. June 4, 2021); *Sunseri v. Experian Info. Sols., Inc.,* No. LACV2008932DOCRAOX, 2021 WL 2327934, at *3–4 (C.D. Cal. June 4, 2021).

Prior to the filing of this lawsuit, neither Plaintiff, nor Southpoint Federal Credit Union ("SFCU"), ever informed Experian that Plaintiff's SFCU Account No. *3776 (the "*3776 account") was included or discharged in her bankruptcy. Importantly, the *3776 account was reporting as "current" when Plaintiff filed for bankruptcy, and it remained current for much of Plaintiff's bankruptcy. Moreover, Plaintiff continued to make payments on other "current" unsecured debts, both during and following her bankruptcy discharge, including another account from SFCU (the "*2699 account") and one from SYNCB/Sam's Club (the "*3308 account").

At bottom, Plaintiff's complaint is that Experian did not act fast enough to distinguish the *3776 account from other positive, current accounts in her file. But the FCRA does not impose strict liability on CRAs like Experian. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 n.6 (11th Cir. 2021). This Court should therefore grant summary judgment to Experian and dismiss this case with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO DEMONSTRATE THAT EXPERIAN'S PROCEDURES WERE NOT REASONABLE.

Rather than addressing the wealth of case law and regulatory guidance cited by Experian in its opening memorandum, Plaintiff simply ignores it. (Pl.'s Opp'n 9–23.) Instead, Plaintiff offers four arguments that fail to meaningfully respond to the issues raised by Experian. Each argument lacks merit.

*Notice of Bankruptcy Discharge*. Plaintiff contends that Experian should have known that the *3776 account was discharged in bankruptcy because its public records

furnisher, Lexis, provided it with basic information about Plaintiff's bankruptcy, including the bankruptcy type, the dates of filing and discharge, and bankruptcy court. (Pl.'s Opp'n 11–13.) But Plaintiff later concedes that Experian "is not required to . . . scour bankruptcy dockets." (Pl.'s Opp'n 21 n.4.) That concession undermines Plaintiff's argument.

Experian was not a party to Plaintiff's bankruptcy. Prior to the filing of her Complaint, Experian never received notice from either Plaintiff or SFCU concerning the *3776 account's inclusion or discharge in Plaintiff's bankruptcy. (Declaration of Kimberly Cave ("Cave Decl."), at ¶¶ 28–29.) Courts have frequently held that CRAs, like Experian, have no obligation to scour bankruptcy dockets to determine the specific legal effect of a consumer's bankruptcy on a debt. *E.g.*, *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747–48 (7th Cir. 2015); *Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *3 n.4 (N.D. Cal. Apr. 26, 2017). That conclusion is echoed by three recent decisions that expressly rejected the argument Plaintiff makes here. *Hernandez*, 2021 WL 2325019, at *4 ("[T]hat Experian reported Plaintiff's bankruptcy and purged . . . other pre-bankruptcy debts does not support an assertion that Experian knew the [relevant] debt was discharged."); *Wheeler*, 2021 WL 2290575, at *3; *see also Sunseri*, 2021 WL 2327934, at *3. It is also supported by the *White* Order and the related Memorandum in Support of Settlement, which recognize that consumers commonly choose to maintain debts during a Chapter 7 bankruptcy and often incur new, post-petition debt on pre-bankruptcy accounts that is not subject to discharge. *White*, 2008 WL 11518799, at *9–14; (Declaration of Christopher Hall ("Hall Decl.") Exhibit G, *White* Memorandum in Support of Settlement, at 9–10.) Indeed, no court or regulatory agency has ever held that the Experian is required

to assume that all unsecured debts are discharged in a Chapter 7 bankruptcy, and Experian's refusal to make that assumption is not evidence of the unreasonableness of its procedures. *See White*, 2008 WL 11518799, at *9–14.

*The Relevance of the* White *Order*. Plaintiff next argues that the *White* Order is not relevant to whether Experian maintained reasonable procedures. (Pl.'s Opp'n 13–16.) Such a claim is undercut by several recent decisions that have held just the opposite. *Hernandez*, 2021 WL 2325019, at *4 (finding that "Experian's exclusion of Plaintiff's current status account from its post-bankruptcy update," like the *3776 account at issue here, "was reasonable under the *White* Order"); *Wheeler*, 2021 WL 2290575, at *4; *see also Sunseri*, 2021 WL 2327934, at *3–4. "To hold otherwise would require CRAs to guess whether accounts considered in good standing due to their current status should be discharged and therefore considered negative, which would further introduce the possibility of harmful error in the credit reporting process." *Id*.

Plaintiff also asserts that, even if the *White* Order does apply, Experian has failed to correctly implement that order—at least with respect to the *3776 account. (*See* Pl.'s Opp'n 14–16.) Plaintiff's claim is meritless. Indeed, several recent decisions have found that the procedures at issue here are a faithful application of the *White* Order's requirements. *Hernandez*, 2021 WL 2325019, at *4; *Wheeler*, 2021 WL 2290575, at *4; *see also Sunseri*, 2021 WL 2327934, at *3–4.

Relevant here, the *White* Order plainly requires Experian to "undertake to exclude" accounts from its bankruptcy scrub that were current at the time of the bankruptcy filing. *White*, 2008 WL 11518799, at *9–14 (specifically, ¶¶ 3.2(b)(ii)(E); 3.2(c)(ii)(E)); (*see also*

Hall Decl. Ex. C, Cave Expert Report, at 11–20.) There is no dispute that the *3776 account was current when Plaintiff filed for bankruptcy, and it remained current for much of Plaintiff's bankruptcy. (Cave Decl. ¶¶ 22–23.) It was therefore excluded from Experian's initial bankruptcy scrub, like other "current" pre-petition, unsecured debts, such as the *2699 and *3308 accounts. That division—between derogatory accounts and current accounts—favors consumers because it allows potentially positive accounts, like the *3776, *2699, and *3308 accounts, to benefit a consumer's creditworthiness while ensuring that derogatory pre-petition debts have been updated to report as discharged in bankruptcy with no balance. (*See* Cave Decl. ¶ 15.)

Although not required to do so by the *White* Order, Experian continued to monitor the *3776 account. (*See id*. at ¶¶ 16–17.) Once SFCU reported that the *3776 account was more than ninety days late, Experian's look-back scrub updated it to report as discharged in bankruptcy with no balance on October 7, 2019. (*Id*. ¶ 27.) Experian did so automatically, despite having never received notice from either SFCU or Plaintiff that the account was included in Plaintiff's bankruptcy. (*Id*. ¶¶ 27–29.) Ultimately, the reasonableness of those procedures is beyond question, regardless of whether the *White* Order is binding on this Court. *Hernandez*, 2021 WL 2325019, at *4; *Wheeler*, 2021 WL 2290575, at *3–4; *Sunseri*, 2021 WL 2327934, at *3–4; *see also White*, 2008 WL 11518799, at *14 ¶ 5.4.

*Subsequent Remedial Measures*. Plaintiff next argues that recent changes made by Experian to its reasonable procedures are an admission ("silent acknowledgement") that those procedures failed to comply with § 1681e(b). (Pl.'s Opp'n 16–19.) That evidence is

plainly inadmissible as a subsequent remedial measure under Federal Rule of Evidence ("FRE") 407, as Plaintiff herself acknowledges. (Pl.'s Opp'n 16 ("Experian's decision to change its reporting procedures may not be interpreted by the Court as an admission of guilt[.]").) Undeterred, Plaintiff attempts to offer those changes as an admission of guilt anyway.

FRE 407 "excludes evidence if three conditions are met." 23 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Evidence § 5283 (2d ed.) (hereinafter "Wright & Miller, Evidence"). Those conditions are clearly met in this case, as Plaintiff's own argument makes clear. (Pl.'s Opp'n 16–19.) *First*, "the evidence must be proof of a remedial measure." Wright & Miller, Evidence § 5283. As Plaintiff concedes, "Experian updated these procedures in response to a growing number of consumer complaints," including Plaintiff's Complaint. (Pl.'s Opp'n 18.) *Second*, "had the remedial measure been implemented in time, it would have made the earlier injury or harm at issue in the case less likely to occur." Wright & Miller, Evidence § 5283. Here, as Plaintiff explains, the *3776 account "would have been reported as discharged in bankruptcy on July 2, 2019, only six days after the discharge" had Experian implemented the changes to its procedures during the time period at issue. (Pl.'s Opp'n 19.) *Third*, "the evidence is offered to prove either negligence [or] culpable conduct[.]" Wright & Miller, Evidence § 5283. In her own words, Plaintiff offers that evidence to show that Experian's "previous procedures . . . did not assure maximum accuracy of the information it was reporting on consumers' credit reports." (Pl.'s Opp'n 16.)

Pursuant to FRE 407, Courts have frequently excluded evidence of subsequent remedial measures in FCRA cases similar to this one. *E.g.*, *Chijioke-Uche v. Equifax Info. Servs., LLC*, No. CV 19-4006, 2021 WL 2005499, at *2 n.3 (E.D. Pa. May 20, 2021); *Brown v. Vivint Solar, Inc.*, No. 818CV2838T24JSS, 2020 WL 2513518, at *4 (M.D. Fla. May 15, 2020). This Court should do the same.[1]

*No Dispute Requirement.* Plaintiff contends that she not required to notify Experian of the inaccurate reporting. (Pl. Opp'n 19–23.) While that may be true, courts and regulatory agencies have repeatedly held that it is reasonable as a matter of law for CRAs, such as Experian, to report information they receive from presumptively reliable sources, like SFCU, until they receive notice from the consumer that the source of that information is unreliable. *E.g.*, *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004); 16 C.F.R. pt. 600 app'x § 607(b)(3)(A). Plaintiff should be well aware of that precedent given that her counsel recently lost on this very issue in the Eleventh Circuit. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 n.6 (11th Cir. 2021) ("To the extent that any of [plaintiff's] claims under § 1681e alleges that Experian acted unreasonably in preparing any credit reports before he informed it of the relevant inaccuracy, the district court properly granted Experian summary judgment for that claim.").

Plaintiff also makes the baseless assertion that Experian would not have updated its reporting to reflect the *3776 account's inclusion and discharge in her bankruptcy, even if

[1] *E.g.*, Fed. R. Civ. P. 56(c)(2); *Walker v. Wayne Cty.*, 850 F.2d 433, 434 (8th Cir. 1988) ("When ruling on a summary judgment motion, the district court may consider only the portion of the submitted materials that is admissible or useable at trial.").

she had disputed it. That claim is directly contradicted by the undisputed factual record. (Cave Decl. ¶ 29). Plaintiff's attempt to cite unsubstantiated *allegations* from pleadings in two other FCRA cases, and an inadmissible settlement agreement in which Experian expressly denied any wrongdoing, does not alter the undisputed factual record. (Pl. Opp'n 22–23; *see also* Fed. R. Evid. 408.) Experian is therefore entitled to summary judgment in its favor as no reasonable jury could find for Plaintiff on this record. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).[2]

## II. PLAINTIFF FAILS TO ESTABLISH THAT EXPERIAN'S REPORTING CAUSED HER ANY HARM.

Plaintiff next argues that she has presented sufficient evidence of damages. (Pl.'s Opp'n 23–34.) The record demonstrates otherwise, and Plaintiff fails to satisfy her burden on this element. *See, e.g.*, *Nagle v. Experian Info. Sols., Inc*., 297 F.3d 1305, 1307 (11th Cir. 2002).

*Creditworthiness.* In support of her unfounded claim that Experian's reporting damaged her creditworthiness, Plaintiff first cites an excerpt from the report of her expert witness, professional testifier Evan Hendricks. (*See* Pl.'s Opp'n 24.) Hendricks is the subject of Experian's contemporaneous Motion to Exclude, and his damages-related testimony has frequently been excluded under FRE 702. *E.g., Anderson v. Equifax Info. Servs., LLC*, No. 2:16-CV-2038-JAR, 2018 WL 1542322, at *5 (D. Kan. Mar. 29, 2018);

[2] Plaintiff's claim that she was entirely unfamiliar with the dispute process, (Pl. Opp'n 21–22), is directly contradicted by the factual record and her own testimony. (Hall Decl. Ex. I, Hoglund Authorization Form, at 1; *see also* Hall Decl. Ex. A, Christa Peterson Deposition, at 63:20–23, 69:23–71:10, 79:13–80:8, 148:3–9.)

*Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015).

Importantly, Hendricks has undertaken no analysis of the impact, if any, Experian's reporting of the *3776 account had on Plaintiff's credit score. (Second Declaration of Christopher Hall ("Second Hall Decl.") Exhibit M, Hendricks Expert Report, at 16–19.) He has no background or expertise in underwriting or consumer lending, and therefore no basis to opine on what impact the disputed information would have on any potential lender's decision. (*Id.* at 22–26; Second Hall Decl. Ex. N, Hendricks Deposition (*Peterson*), at 9:12–11:11, 12:7–25.)

Plaintiff next cites a Consumer Financial Protection Bureau report that clearly indicates—as Experian contends—that filing for bankruptcy is far more damaging to consumer credit than a mere delinquency. *See* Consumer Fin. Prot. Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System* 12 (Dec. 2012), http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf. She also cites out-of-context statements from Experian's website regarding credit reporting, but those statements are no help to Plaintiff. (Pl.'s Opp'n 25–27.) Plaintiff offers no evidence to show that Experian's reporting of the *3776 account was the basis for any adverse credit decisions, and her express admission that any post-bankruptcy credit denials resulted from the bankruptcy itself undercuts any claim to the contrary. (Hall Decl. Ex. A, Christa Peterson Deposition, at 13:2–12, 15:22–17:12, 132:25–133:9.)

*Actual Damages*. Plaintiff also claims that she was denied credit by Chase Bank on August 7, 2019, as a result of Experian's reporting (and not because of her bankruptcy).

(Pl.'s Opp'n 27–30; Declaration of Christa Peterson ("Peterson Decl.") at ¶ 7.) Unsurprisingly, she can't produce a credit denial letter. Even more important, that claim is *directly* contradicted by Plaintiff's own deposition testimony:

> Q. That's okay. Did you create any notes to help you prepare?
>
> A. Yeah, I wrote down a few things that I got denied for, a credit card that I tried to apply for but **I got denied because of the -- must be my credit or something because of the bankruptcy.**
>
> Q. Okay. What -- what credit card was that?
>
> A. **It was Chase**.
>
> * * * * *
>
> Q. Okay. Are you looking at those notes you wrote down right now?
>
> A. Yep. I just have **Chase**, Scheels, American Eagle, and **then, backslash, denied**.
>
> Q. Okay.
>
> A. **Because of the bankruptcy**.

(Hall Decl. Ex. A, at 13:5–13, 17:7–12 (emphasis added).) Incredibly, Plaintiff *omits* that testimony from her argument, all the while claiming that "Experian deliberately misstates statements made by Plaintiff in her deposition to fit its false narrative that Plaintiff's bankruptcy was the sole reason for all credit denials." (Pl.'s Opp'n 29.) Plaintiff's argument and sham affidavit should be seen for what they are: a thinly veiled attempt to manufacture factual disputes to avoid summary judgment. *See City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 475–76 (8th Cir. 2006) (emphasizing that an affidavit that directly contradicts previous deposition testimony cannot create a genuine issue of material fact under Rule 56).

Plaintiff also omits the fact that she later reapplied for credit with Chase Bank on November 19, 2019, *after* Experian updated the *3776 account to report as discharged in bankruptcy with no balance. (Hall Decl. Ex. J, Plaintiff's March 25, 2020, Disclosure, at 9.) Plaintiff was again denied credit by Chase. (*See id*. at 2–9.) That subsequent denial further undermines Plaintiff's baseless claim that the initial Chase denial was based on Experian's reporting of the *3776 account.

*Emotional Damages*. Plaintiff claims that her testimony is sufficient to establish actual damages. (*See* Pl. Opp'n 30–34.) Unlike in *Barton v. Ocwen Loan Servicing LLC*, however, Plaintiff's alleged harms (*i.e.*, anxiety and depression) predate her bankruptcy and she was not denied credit based on "grossly inaccurate" reporting by Experian. *See* No. CIV. 12-162 MJD, 2013 WL 5781324, at *5 (D. Minn. Oct. 25, 2013). Instead, this case is more akin to those granting summary judgment to FCRA defendants where plaintiffs "suffered no physical injury," were "not medically treated for any psychological or emotional injury," and "offered no reasonable detail about the nature and extent of [their] alleged emotional distress." *Taylor v. Tenant Tracker*, *Inc*., 710 F.3d 824, 828 (8th Cir. 2013); *accord Dao v. Cellco P'ship*, No. 14-1219 (JRT/BRT), 2015 WL 7572304, at *5 (D. Minn. Nov. 24, 2015); *Edeh v. Equifax Info. Servs. LLC*, 974 F. Supp. 2d 1220, 1242–45 (D. Minn. 2013).

Relevant here, Plaintiff admitted—unequivocally—that she has not met with, or been examined by, any medical or mental health professionals to treat or diagnose any condition caused by the Experian's reporting. (*See* Hall Decl. Ex. K, Plaintiff's Responses to Experian's First Set of Requests for Admission, at 4–5.) She also admitted that she

incurred no expenses in connection with medical or counseling treatment as a result of Experian's credit reporting. (*Id.*) Plaintiff also makes no claim she suffered any physical injury as a result of Experian's reporting. (*See* Second Hall Decl. Ex. O, Plaintiff's Responses to Experian's First Set of Interrogatories, at 6–8.)

Plaintiff conceded that her longstanding anxiety and depression predated her bankruptcy, and admitted that she attributed her emotional distress, including her need to obtain counseling, to her financial struggles and bankruptcy filing. (Second Hall Decl. Ex. P, Christa Peterson Deposition, at 47:24–48:9, 52:3–18, 54:9–18.) Despite being asked directly, Plaintiff declined to specifically attribute her depression, anxiety, and other struggles to Experian's reporting of *3776 account:

> Q. And you understand that in this case, you know, we're talking about this one specific SouthPoint account? Can you narrow it down that specifically as related to that one specific account or is it bigger than that?
>
> A. It's -- it's all of it. I mean, you just -- it's all of it.
>
> Q. Hard to sort of separate it out?
>
> A. Yeah. How do you just nitpick on one? It's all of it.

*Id*. at 52:24–53:10.

Plaintiff's claim that Experian's reporting of the *3776 account caused her emotional distress is unsupported by any third-party testimony, medical records, or other relevant evidence, and it is directly contradicted by Plaintiff's prior unqualified admissions and deposition testimony. Because no reasonable jury could find for Plaintiff on the issue of damages, Experian is entitled to judgment in its favor.

## III. THERE IS NO EVIDENCE THAT EXPERIAN WILLFULLY VIOLATED THE FCRA.

Courts have repeatedly held that CRAs have no duty to determine what debts are discharged in a consumer's bankruptcy, and that they may rely on presumptively accurate reporting from financial institutions such as SFCU. *E.g.*, *Sarver*, 390 F.3d at 972; *Wright v. Experian Info. Sols., Inc*, 805 F.3d 1232, 1241 (10th Cir. 2015); *accord* 16 C.F.R. pt. 600 app'x § 607(b)(3)(A). It is therefore unsurprising that Plaintiff offers no evidence to show that Experian either knowingly or recklessly violated the FCRA. *See Pedro v. Equifax, Inc*., 868 F.3d 1275, 1280 (11th Cir. 2017).

Plaintiff asserts that Experian willfully violated the FCRA because it had "ample notice of Plaintiff's bankruptcy discharge notice." (Pl. Opp'n 34–36.) However, several recent decisions from the Central District of California have unequivocally held that Experian's reporting Plaintiff's bankruptcy and purging of "other pre-bankruptcy debts does not support an assertion that Experian knew the [relevant] debt was discharged." *Hernandez*, 2021 WL 2325019, at *4; *Wheeler*, 2021 WL 2290575, at *3; *see also Sunseri*, 2021 WL 2327934, at *3. Relevant here, Experian cannot be liable for willfully violating the FCRA where it "followed an interpretation that could reasonably have found support in the courts." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69–70 & n.20 (2007).

Bizarrely, Plaintiff concludes by asserting that she "plausibly alleges a 'knowing violation' of the FCRA, which reviewing courts accept as true on a Rule 12(b)(6) Motion." (Pl.'s Resp. 36.) But this case is well beyond the pleadings stage, and a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but

must set forth specific facts showing that there is a genuine issue for trial." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010). Plaintiff's failure to do so entitles Experian to summary judgment.

## CONCLUSION

For the foregoing reasons, Experian respectfully requests the Court grant Experian's Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

Dated: June 9, 2021.

Respectfully submitted,

*/s/ Christopher A. Hall*

Christopher A. Hall, IL #6316715
(admitted *Pro Hac Vice*)
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Email: chall@jonesday.com

Christopher M. Johnson, MI #P82861
(admitted *Pro Hac Vice*)
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121-3134
Telephone: (858) 314-1185
Email: cjohnson@jonesday.com

Gregory J. Myers, MN #0287398
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: gjmyers@locklaw.com

*Counsel for Defendant Experian Information Solutions, Inc.*